# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

UNITED STATES OF AMERICA

vs.  Case No.: 8:20-CR-242-T-35CPT

YAKLI JAVIER OROZCO PEREZ

_____/

## DEFENDANT'S SENTENCING MEMORANDUM

**COMES NOW**, the Defendant, YAKLI JAVIER OROZCO PEREZ, by and through his undersigned counsel, respectfully requests a sentence below the advisory guideline pursuant to Section 18 U.S.C. §3553(a)(1)-(7) and USSG §3B1.2 (Mitigating Role), and as grounds in support thereof states as follows:

1. On November 10, 2020, the Defendant pled guilty with a plea agreement with the Government to Count One of the Indictment, Conspiracy to Possess With Intent to Distribute 5 Kilograms or more of Cocaine while on board a vessel subject to the jurisdiction of the United States.
2. The Defendant is set for sentencing before this Court on January 28, 2021, at 9:30 am.
3. The Defendant is not subject to the 120 month minimum mandatory sentence since he meets the criteria for Safety Valve, pursuant to USSG §5C1.2. (PSR ¶69)
4. The United States Probation Office has calculated the Defendant's advisory guideline range to be (Level 29, Criminal History I), 87 - 108 months of imprisonment. (PSR ¶70)
5. After a full and careful review of the facts of this case, the history and characteristics of the Defendant, as well as the Defendant's role in this case, the Defendant asserts a fair and reasonable sentence is a sentence of **30 months** in the bureau of prisons.

## 18 U.S.C. §3553

The Defendant asserts a sentence of **30 months** in the bureau of prisons is sufficient but not greater than necessary to comply with the purposes of sentencing pursuant to §3553. The facts and or factors that support this sentence for the Defendant are:

1. The Defendant is 27 years old and was born and raised in the town of Nueva Guinea, Nicaragua where he was raised by his parents. (PSR ¶ 42)

2. The Defendant has 7 siblings born to both his parents. (PSR ¶ 46)

3. The Defendant and his family grew up in <u>dire poverty</u> as they struggled to survive, often not having enough food to eat. (PSR ¶ 44)

4. The Defendant's father worked as an electrician (PSR ¶ 42) and his mother was a homemaker.  However, his father's income often wasn't enough to provide for the family's basic needs. (PSR ¶ 42)

5. The Defendant began working at a young age to earn money to help support himself and the family.  Some of his jobs were as a farmhand on a farm where he would milk cows and also inject them with antibiotics.  He also worked by farming yuca and pineapples and other fruits and vegetables.  (PSR ¶ 63)

6. As a result of having to work as a small boy, the Defendant only attended school until the 4th grade.  (PSR ¶ 61)

7. In his late teens and early twenties, the Defendant moved to Costa Rica where he worked in the sugar cane fields.  In doing so, the Defendant left his family and his country to find better paying work.  (PSR ¶ 64)

8. In 2016, at the age of just 23 years old, the Defendant was fortunate to find employment in Costa Rica at Cabo Blanco Travelers.  (PSR ¶ 65)

9. At Cabo Blanco Travelers, the Defendant worked as a tour guide to travelers and vacationers from around the world who traveled to Costa Rica for its beautiful beaches, waters, wildlife, and adventures.  The Defendant had many skills and talents that he developed as a tour guide including leading guided horseback tours in the jungle and on the beaches, leading snorkeling adventures, and aboard fishing excursions.

10. The Defendant loved his work at Cabo Blanco Travelers.  He was making solid money, he was happy, and he was making other people's lives happier while they were on "Once in a Lifetime" vacations.

11. The Defendant was and is a hardworking young man.

12. The Defendant also worked to support his 5 year old son, who resides with the Defendant's former girlfriend. (PSR ¶ 54)

13. Before the Corona Virus Pandemic, the Defendant's life was good and trending upwards.  He worked for Cabo Blanco Travelers, he earned enough money to support himself, his child, and to help his family back home in Nicaragua who were struggling.

14. It was NEVER on the Defendant's mind to break the law, commit a crime, or engage in an illegal boat trip with drugs.  The Defendant has NO PRIOR CRIMINAL RECORD of any kind. (PSR ¶ 33 - 39)

15. However, when the Corona Virus Pandemic struck, Cabo Blanco Travelers in Costa Rica was not immune from this Global Pandemic and the destruction it left behind.  In March of 2020, with the Pandemic raging out of control, the international travel/vacation industry came to a screeching halt.  Flights and travel were cancelled.  Vacations that had been planned for months or years to Costa Rica were forced to be cancelled.  No one was traveling to Costa Rica for vacation and fun.  As a result, the Defendant lost his employment at Cabo Blanco Travelers since there were no tourists, which meant there

    was no money, which meant the Defendant now could not support himself, his son, or his family back home. (PSR ¶ 66)

16. At 27 years of age, suddenly in the midst of a frightening Global Pandemic, with no end in sight, with his job/career now gone in an instant, with no money or prospects of money, with no monetary support from his Government, the Defendant was scared, he was desperate, and he was in a bad spot. After months of no money, no job, and no income, the Defendant was approached and asked to go on a boat trip. He made the worst mistake of his life and agreed to go on the trip. The decision was wrong, and he should have known better. However, he only went on this trip because of the unique times he and the world were living through with the Corona Virus Pandemic. If not for the Pandemic, he would have NEVER participated. His lack of criminal record, his strong employment history, and his strong work ethic support the fact that but for the Corona Virus, he would have NEVER remotely considered joining an illegal drug trip.

17. The Defendant played a Minor Role pursuant to USSG §3B1.2, in this ill-fated trip. The Defendant was not the captain of this boat nor was he the mechanic. He was a simple mariner. He was not in charge and he had absolutely no decision making authority. The Defendant did exactly as he was told and he followed all orders. He provided no role that was integral to this smuggling trip being successful. Further, he did not understand the full scope or structure of the criminal activity, he did not participate in the planning or organizing of the activity. He was given a mere $100 up front for his participation with the promise of more money after the trip was successfully completed (which it obviously wasn't and he received no additional money). He didn't own the drugs, nor would he share in the profits. The Defendant didn't recruit any other participants, rather he was recruited himself when he was desperate and at rock bottom.

18. The facts listed above show that the Defendant is not a risk to re-offend or ever engage in any future criminal conduct.

## **ARGUMENT**

    Usually in a sentencing memo I write about my client and who she/he really is. But in this unique case we have here before the Court, I don't need to write about my client, instead I will let other citizens from around the world who have had first-hand in person interaction with him detail who he, Yakli Javier Orozco Perez, really is. More specifically, please find the Trip Advisor website internet reviews and comments by customers and patrons who have had Javier, (the Defendant) as their vacation tour guide in Costa Rica. Javier, (or sometimes spelled Havier) before the pandemic worked as a tour guide for Cabo Blanco Travelers in Costa Rica. From 2016 to early 2020, before the Pandemic shut down air travel, tourism, and vacations worldwide,

3

Javier worked as a tour guide leading horseback riding trips, taking travelers on fishing excursions, taking travelers on breath taking snorkeling experiences, and other fantastic adventures that would create memories for these vacationers for a lifetime.

    Below is a screenshot of the Trip Advisor website for Cabo Blanco Tours and the link to the website.  If you search for "Javier" at the link you will find <u>six pages</u> of reviews by happy tourists who write about Javier and the wonderful experiences and service he provided them and their family on their vacations. https://www.tripadvisor.com/Attraction_Review-g309278-d10467184-Reviews-or20-Cabo_Blanco_Travelers-Montezuma_Province_of_Puntarenas.html#REVIEWS





With a search for "Javier" at the Trip Advisor website, you will find many rave reviews about Javier dated from July 2017 to as recently as November 2019. I have highlighted just a few of these reviews and photographs that specifically show Javier with the vacationers.

5

- Denise P, September 19, 2017, wrote:



## Amazing people and so much fun

Review of **Cabo Blanco Travelers**

●●●●● Reviewed September 19, 2017  ☐ via mobile

Denise P
☑3 👍2

We went on two excursions with them, Horseback riding and Snorkeling, each priced at $35 per person.

At $35, we expected horse back riding to be a light walk to see a waterfall and back. Instead our amazing tour instructor, Javier, taught us how to actually ride and guide the horse. It took over an hour to get to the waterfall. Javier safely helped us climb the mini mountain to the cascade. He was very patient during our mini photo shoots. He conversed with all the participants to make sure everyone had fun. He even cut up a fresh pineapple for us to enjoy. By the time we rode back, I could skillfully gallop on my very responsive horse, Boca.

The next day, we signed up for snorkeling. I had done it once in Jamaica but this experience was completely different. We boarded a boat at 9am led by the very funny Captain Carlos and friendly chef Junior to Isla Tortuga (Turtle Island) about 45mins from Montezuma.
The itinerary was to snorkel, eat (option of fish, chicken or vegetarian), chill out on the island for two hours (there's a bar and souvenir shop as well as water sports like Jet Skiing) and head back.

In terms of actually snorkeling, it was fun to be out in a safe part of the ocean and swim. Carlos would help us see fish by throwing pieces of salmon into the water so that they would swim up. However, given the season and rain in the previous days, the visibility was very low. Some of the participants had been given an impression that we were going to the island to whale-watch. And although that wasn't the intent, Carlos made every effort to accommodate their wishes. Luckily, we did end up seeing a hump back whale.

IMPORTANT:

-It's cheaper to pay in cash. If you pay using a credit card, you will incur an 11% fee plus tax.

-These activities were not short. Plan to be out for half the day.

-Tip! My friend and I made sure to tip the instructors. The food they prepare for you, the attention they give and all the time they spend with you is undervalued. Besides, if you were anywhere but Montezuma, the activities would cost three times as much.

Overall, booking with Cabo Blanco Travelers made our trip more fun, not just for the aforementioned experiences but because they helped us meet the locals at the bar and gave us helpful advice on travel arrangements and our own hiking.

**Date of experience:** September 2017



- Shawna F., July 7, 2018 wrote:

## Horseback riding

Review of Cabo Blanco Travelers

⬤⬤⬤⬤⬤ Reviewed July 7, 2018  ☐ via mobile

We had an amazing horseback riding tour with our guide Javier! They did a special off time tour for us because we had time constraints that day and because it was my birthday Javier made is special by taking us away from the beach to see some monkeys and he even climbed a tree and cut down coconuts because I said I loved coconut water! He also let me take a break so I could take a dip in the ocean! It was truly amazing! I highly recommend this tour group! They are flexible and we'll priced. Plus the animals were treated well and healthy! I was really impressed.

**Date of experience:** July 2018






- Anabel S., August 19, 2018, wrote:



### Increíble día!!

Review of **Cabo Blanco Travelers**

⬤⬤⬤⬤⬤ Reviewed August 19, 2018   via mobile

[ Google Translation ]

Hoy hicimos un tour a Isla Tortuga con mis sobrinos y familia. Vimos muchas ballenas y tortugas y peces preciosos. La comida también estuvo deliciosa!!
Quiero agradecer al crew este magnífico día, sin ellos no habría sido lo mismo!!
Gracias Zacarías, Luis, Maikol y especialmente Javier!! Q gran equipo!!

**Date of experience:** August 2018




Increíble día!!
Traveler photo submitted by Anabel S (Aug 2018)



- Ruthie L., January 4, 2019 wrote:

## Private boat trip for 10 people

Review of Cabo Blanco Travelers

⬤⬤⬤⬤⬤  Reviewed January 4, 2019   ☐ via mobile

We had an amazing experience with this company and it's great ream. Michael and Havier made sure we had the best time and took us to see special places that were not included on our tour! Havier prepared us a delicious lunch and fresh fruit including beers and drinks. They both have a great sense of humor and are very lively. We did shnorkling and swam at beautiful beaches.
We really recommend booking with them! Thanks for fulfilling our requests with a smile. This was one of our best day in Costa Rica!!!

**Date of experience:** January 2019

   





Below is a photograph dated December 2018 from the management company showing Javier holding up a big fish that one of his vacationers caught on their fishing excursion.



These photographs and reviews posted on Trip Advisor show exactly what Javier was doing for the four years before the Pandemic hijacked the world and life as we all previously knew it. Javier was not an international drug smuggler. Javier is a good person. He is a hard working young man who helps vacationers have fun on vacation in Costa Rica. Prior to the Pandemic, he never thought of transporting drugs, or risking his life and freedom by engaging in this risky and dangerous conduct. Javier is a fun loving and free-spirited young man who worked hard at becoming the best horseback riding, snorkeling, and fishing tour guide he could be. He loved this job and career as it allowed him to bring joy to the lives of others, while also giving him the opportunity to earn a living and provide for his family back home in Nicaragua. But for the Corona Virus Global Pandemic, vacationers would have still flocked to Costa Rica, they would have read the reviews and continued to hire Cabo Blanco Travelers as their tour guide/excursion company, and Javier would have still been working and making a living to

support his family. But once the Pandemic hit, it all came to a screeching halt. With no tourists in Costa Rica Javier found himself with no job, no money, and no prospects. He was desperate. He was scared. He was broke. He was at rock bottom. And of course, it was at this point he was approached and offered to go on this illegal boat trip. He was young, just 27. And in this desperate time, with no idea when or if this pandemic would ever end, he made the worst decision of his life. He said yes. It is a decision he will regret for the rest of his life. He has shamed himself, and more importantly his family. He understands what he did was wrong and illegal, and that there is a punishment he must pay. But this Pandemic was a "Once in a Lifetime" event. And so was his decision to participate in this boat trip. He is not a risk to re-offend. He does not need a lengthy prison sentence to deter his future conduct. He is ready to go back home to his family in Nicaragua and try to repair his life and make sure he and his family are healthy and safe. In early March of 2020, it would have been inconceivable to imagine or predict that in that in just a few months time, Javier would be in jail in Tampa, Florida, and before the Court for sentencing for a drug boat trip.

      The Defendant has been continuously incarcerated since his arrest in this case. His freedom has never before been taken away from him like this. He is jailed. He is not free. He is over a thousand miles from his family. He is in the Pinellas County Jail which has had numerous outbreaks of the Corona Virus. He fears for his own health and safety. He also fears for the health and safety of his family back home as the Corona Virus is in Nicaragua as well, and his family does not have the financial ability to get the best medical care if they get infected.

      Since the Defendant's family all live in Nicaragua, and because of the Corona Virus, they will not be able to visit him or see him throughout the duration of his prison sentence. This makes his service of sentence even tougher than it already will be. He will be isolated and alone.

The Defendant also timely plead guilty in this case with a plea agreement from the Government. This allowed the Government to not have to expend additional time and resources in preparing the Defendant's case for trial.  The Defendant was the first of the 3 Defendants in this case to plead guilty and accept responsibility for his actions.

For these above-mentioned factors and reasons, and others that will be discussed at the Defendant's sentencing hearing, the Defendant feels a sentence below the advisory guideline range is fair, just, and reasonable in this case.

### **Mitigating Role USSG §3B1.2**

The Defendant asserts that his specific conduct in this offense, qualifies him for a 2 level downward adjustment as a minor participant in this case pursuant to USSG §3B1.2 (b).  The facts that support the Defendant's position are:

1. The Defendant was not the captain of the boat.
2. The Defendant was not the mechanic.
3. The Defendant was not the leader or organizer of the boat trip.
4. The Defendant had no decision making authority of any kind, including no decision making powers over any of the other crew members.
5. Additionally, he had no decision-making powers over where the boat was going, who they were meeting up with, and he was not personally in communication via the satellite phone with the higher-up members of the conspiracy.
6. The Defendant didn't pick the crew members, didn't place the drugs in the boat, didn't arrange a buyer for the drugs, or a price for the drugs, didn't decide when the drug trip

would commence, or how it would commence, and didn't negotiate the mode and manner of payment for the drugs.

7. Rather, the Defendant simply showed up as instructed, was on board the boat with the drugs as it set out to sea, and was following all orders of the captain.

8. Additionally, the Defendant did NOT receive any significant payment or compensation for his participation in this venture other than a mere $100 up-front fee.

9. The Defendant didn't recruit or hire any other people to join in this criminal conduct.

## MEMORANDUM OF LAW

In 2015 the USSC amended the Mitigating Role guideline in the Federal Sentencing Guideline Manual. In the Highlights of the 2015 Amendments section of the 2015 Manual (page xvii), it states "A Commission study of this guideline led it to conclude that 'mitigating role is applied inconsistently and **more sparingly** than the Commission intended." The Commission therefore amended this guideline to "provide additional guidance to sentencing courts in determining whether a mitigating role adjustment applies."

In applying U.S.S.G. §3B1.2 MITIGATING ROLE adjustment, the Guidelines state as follows:

> **Based on the defendant's role in the offense, decrease the offense level as follows:**
> **a)** **If the defendant was a minimal participant in any criminal activity, decrease by 4 levels.**
> **b)** **If the defendant was a minor participant in any criminal activity, decrease by 2 levels.**
> **In cases falling between (a) and (b), decrease by 3 levels.**

Application Note 3(A) discusses the applicability of the Mitigating Role adjustment for a "Substantially Less Culpable than Average Participant". Specifically, this section provides a range of adjustments for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant in the criminal activity.

In the 2015 Sentencing Guideline, the USSC amended Application Note 3(C) to add a non-exhaustive list of factors the court should consider in determining if a mitigating role adjustment applies, and if so, which adjustment (2, 3 or 4 levels). These factors are:

*(i)   The degree to which the defendant understood the scope and structure of the criminal activity;*

*(ii)  The degree to which the defendant participated in the planning or organizing the criminal activity;*

*(iii) The degree to which the defendant exercised decision-making authority or influenced the exercise of decision making authority;*

*(iv)  The nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;*

*(v)   The degree to which the defendant stood to benefit from the criminal activity.*

*For example, a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for an adjustment under this guideline.*

*The fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative. Such a defendant may receive and adjustment under this*

14

*guideline if he or she is substantially less culpable than the average participant in the criminal activity.*

In <u>The United States of America v. Carlington Cruickshank,</u> 837 F.3d 1182 (11th Circuit, 2016), the 11th Circuit Court of Appeal recently remanded a similar boat case back to the District Court for re-sentencing because the District Court stated during the sentencing hearing that the quantity of 171 Kilograms of cocaine seized in the case precluded the Defendant from being considered for a Minor Role reduction. The <u>Cruickshank</u> court held that the a district court can consider the drug quantity as an indicator of a defendant's role, but that it is legal error for a district court to say this is the only factor to be considered. Additionally, the <u>Cruickshank</u> Court held that the 2015 Amendment to the Mitigating Role guideline in §3B1.2 clarified that a defendant could be considered for a minor role adjustment in many circumstances, none of which turn on drug quantity.

In the case at bar, the Defendant's Minor Role argument also relies on the Unpublished opinion of the 11th Circuit Court of Appeals in <u>USA v. Eric Pedro Valdez</u>, D.C. Docket No.: 5:17-cr-00046-PGB-PRL-1, which was decided and filed with the Court on July 28, 2020, in Case Number 19-14778 and the Unpublished opinion of the 11th Circuit Court of Appeals in <u>USA v. Gerlin Rutilio Ibarguen Valencia</u>, D.C. Docket No.: 8:18-cr-00525-JSM-TGW-3, which was decided and filed with the Court on July 28, 2020, in Case Number 19-12754. Specifically, in <u>Valdez</u>, the Court held that a drug courier defendant who is held accountable for only his own relevant conduct may still receive a role reduction. The Court went on to hold that the Court legally erred by denying a reduction based on a single factor. Rather the Court held that on remand, the sentencing court should base it role-reduction decision on "the relevant factors and

the totality of circumstances." Similarly, the 11th Circuit Court of Appeals in Ibarguen Valencia held that the sentencing court's decision to deny the defendant's request for a minor role reduction based on one single factor, solely because he was the mechanic, was in error, and thus the case must be remanded for re-sentencing for the court to examine the defendant's role in the relevant conduct based on the totality of the circumstances and based on the relevant factors articulated in *De Varon* and in the commentary to USSG §3B1.2.

In the Defendant's case at bar, the Defendant did not know or understand the scope or structure of the criminal activity. The Defendant did not participate in the planning or organizing of the criminal activity. The Defendant exercised no decision-making authority. The Defendant played a very limited and basic role in this criminal activity. He was simply a mariner following all of the captain's orders. The Defendant had no discretion in his actions, he simply had to do what he was told. The Defendant was paid only $100 up-front and never received any other money or compensation. He had no ownership rights to the cocaine and would not share in its profits. The Defendant had no proprietary interests in the drugs as they were not his. The Defendant was unaware of who the drugs were going to or how much the drugs were being sold to the other party for. The Defendant didn't recruit or hire any other members of this trip or any other members of this criminal conspiracy. In contrast, the ship's Captain (Co-Defendant Elvin Josue Rojas Siles) was in charge, had decision making authority, and he was responsible for the drugs. As such, the Defendant is clearly less culpable than the captain. The Defendant's conduct compared to the many other people in this criminal conspiracy was minor. There were other higher-ups who organized the trip. Who purchased or commandeered the boats. Who made sure the waters were clear of law enforcement or local coast guards. Who produced the drugs. Who

packaged the drugs. Who negotiated with a buyer on the price and quantity for sale. Who negotiated how and when and what type of payment would be received. There were also other members of the conspiracy, most of which were unknown to the Defendant who also performed more essential and important roles than the Defendant's minor task to be a simple mariner on the boat.

**WHEREFORE**, the Defendant respectfully requests this Honorable Court find that the Defendant should be sentenced below the advisory guideline range pursuant to Section 18 U.S.C. §3553,

**WHEREFORE**, the Defendant respectfully requests this Honorable Court find that the Defendant should receive a 2 level Minor Role downward adjustment,

**WHEREFORE**, the Defendant respectfully asks the Court to recommend he serve his BOP prison sentence at the Coleman prison facility in Florida.

**WHEREFORE**, the Defendant respectfully asks the Court to recommend the Defendant take classes in the English language and work to earn money while in the Bureau of Prisons.

**RESPECTFULLY SUBMITTED**

 s/ Andrew Shein
Andrew Shein, Esq.
FLBar #0145734
Attorney for Defendant
**The Law Offices of Andrew Shein, P.A.**
3605 West Azeele Street
Tampa, FL  33609
(813) 877-4357
(813) 877-4356 (fax)
E-mail:  Andrew@AndrewShein.com

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on   January 10, 2021   , I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Tereza Zambrano Ohley
Office of the United States Attorney
400 North Tampa Street, Suite 3200
Tampa, Florida 33602


  s/ Andrew Shein
Andrew Shein, Esq.
FLBar #0145734
Attorney for Defendant
**The Law Offices of Andrew Shein, P.A.**
3605 West Azeele Street
Tampa, FL  33609
(813) 877-4357
(813) 877-4356 (fax)
E-mail:  Andrew@AndrewShein.com