UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

    v.                        CASE NO. 8:20-cr-242-T-35CPT

YAKLI JAVIER OROZCO PEREZ

### UNITED STATES' SENTENCING MEMORANDUM

The Court should sentence the defendant, Yakli Javier Orozco Perez, to 70 months, the low end of his applicable guideline range taking into account the government's recommendation for a two-level downward departure in recognition of Mr. Orozco Perez's substantial assistance to the United States. Dkt. 63. In support thereof, the United States provides the following:

### Factual Background

The defendant conspired to distribute approximately 83 kilograms of cocaine and 909 kilograms of marijuana. According to the plea agreement, the following facts are not in dispute, Dkt. 30:

On or about August 8, 2020, the U.S. Coast Guard ("USCG") intercepted a go-fast vessel (GFV) in international waters approximately 60 nautical miles southwest of Punto Banco, Costa Rica. The Coast Guard Cutter HAMILTON launched a small boat to investigate the GFV, gained positive control, and conducted a right-of-visit boarding. Defendant Elvin Josue Rojas Siles identified himself as the master of the vessel and made a claim of Costa Rican nationality for the vessel. The USCG contacted the Costa Rican government to confirm the vessel's registry. The

Costa Rican government responded that it could not confirm the claimed nationality and registry of the vessel. Therefore, and in accordance with 46 U.S.C. § 70502(c)(1)(A) and (d)(1)(C), the GFV is a vessel without nationality and therefore subject to the jurisdiction of the United States.

In addition to the master, Mr. Rojas Siles, defendants Yason Arbei Moreno Gomez and Yakli Javier Orozco Perez were also found on the GFV. The Coast Guard seized numerous bales and packages containing eighty-three (83) kilograms of cocaine and nine hundred and nine (909) kilograms of marijuana which were in plain view on the deck of the GFV.

Mr. Orozco Perez willingly agreed to transport bales containing at least eighty-three (83) kilograms of cocaine and at least nine hundred and nine (909) kilograms of marijuana aboard the GFV with his codefendants and others. The purpose of this agreement was to smuggle this cocaine and marijuana through international waters and distribute the cocaine and marijuana to other persons. The defendant knew that the bales onboard the GFV contained five (5) or more kilograms of cocaine and one hundred (100) or more kilograms of marijuana and knew that the planned voyage was a drug smuggling venture.

*Id.* at p. 20-21.

## Procedural Background

On August 20, 2020, a grand jury returned a two-count indictment against defendants Mr. Rojas Siles, Mr. Moreno Gomez, and Mr. Orozco Perez. Dkt. 1. Count One (to which defendant has pleaded guilty) charged the defendants with

conspiring to distribute, and possession with the intent to distribute, five kilograms or more of a mixture and substance containing a detectable amount of cocaine and one hundred kilograms or more of a mixture and substance containing a detectable amount of marijuana. *Id.* That indictment also charged the defendants with possessing with the intent to distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine and one hundred kilograms or more of a mixture and substance containing a detectable amount of marijuana. *Id.*

The defendants had their initial appearances in the Middle District of Florida on August 28, 2020. Dkt. 20. After a detention hearing, where each defendant reserved on the issue of bond, the Court ordered the Defendants detained pending trial. Dkt. 21. The Court also issued a Pretrial Discovery Order and Notice of Trial and Status Report. Dkt. 23.

On November 10, 2020, Mr. Orozco Perez pleaded guilty to Count One of the Indictment pursuant to a written plea agreement before the Honorable Magistrate Judge Christopher P. Tuite. Dkt. 30, 39. The Court adjudicated Mr. Orozco Perez guilty on November 25, 2020, and scheduled his sentencing for January 28, 2021. Dkt. 53.

## Presentence Investigation Reports

The final version of the presentence report (PSR) for Mr. Orozco Perez was filed on January 14, 2015. Dkt. 64. The final presentence report calculated a base offense level of 34 based on the converted drug weight of the cocaine and marijuana, and applied a two-level safety valve reduction under U.S.S.G. §2D1.1, as well as a

three-level acceptance of responsibility adjustment under U.S.S.G.§ 3E1.1(a) and (b), resulting in a total offense level of 29. *Id.* at ¶¶ 20, 21, 22, 28, and 29. Mr. Orozco's criminal history was established to be Category I. *Id.* at ¶ 36. As a result, Mr. Orozco Perez's guideline imprisonment range was determined to be 87 to 108 months. *Id.* at ¶70. Since Mr. Orozco meets the criteria in 18 U.S.C. § 3553(f)(1)-(5), the Court may impose a sentence in accordance with the applicable guidelines without regard to the statutory minimum sentence. *Id.* at ¶69. The guideline range for supervised release was calculated at 2-5 years, the fine range is $30,000 to $10,000,000, and a $100 special assessment is mandatory. *Id.* at ¶ 73, 76, 77. Additionally, the probation office did not identify any reasons to warrant a sentence outside the guidelines range. *Id*. at ¶85. The probation office included reasons identified by defendant that defense counsel believes may warrant a variance. *Id.* at ¶ 88.

     Mr. Orozco Perez objected to the initial presentence report. His main objection asserts that he qualifies for a minor role adjustment pursuant to U.S.S.G. §3B1.2.[1] On January 14, 2021, the United States filed a motion to recognize Mr. Orozco Perez's substantial assistance with a two-level downward departure. Dkt. 63.

---

[1] Mr. Orozco Perez also requested that the probation officer add or correct personal information for the court's consideration in paragraphs 45, 54, 56, and 66 of his PSR. The United States has no objection to the addition of such information. Mr. Orozco Perez additionally requested that Paragraph 10 be amended to reflect that the United States will not object that Mr. Orozco Perez qualifies for Safety Valve relief under 18 U.S.C. 3553(f)(1)-(5) and U.S.S.G. §5C1.2—the United States has not so objected, therefore, this addition would have been unnecessary and was not made.

The United States submits that Mr. Orozco has not demonstrated his entitlement to a minor role adjustment, and that a further variance below the guidelines calculated by the court would result in a sentence that is insufficient to meet the statutory purposes of sentencing under 18 U.S.C. § 3553(a).

## Objection: Minor Role

### A. Legal Framework

Under the U.S. Sentencing Guidelines, a defendant may receive an offense level reduction for having a limited role in the offense. U.S.S.G. §3B1.2. The defendant may receive a four-level reduction if he was a minimal participant, a two-level reduction if he was a minor participant, or a three-level reduction if he was somewhere in between. *Id.* The adjustment applies to defendants that are "***substantially less culpable than the average participant*** in the criminal activity." *Id.* § 3B1.2 cmt. n.3(A) (emphasis added). As the proponent of a downward adjustment, the defendant "bears the burden of proving a mitigating role in the offense by a preponderance of the evidence." *United States v. Rodriguez De Varon*, 175 F.3d 930, 939 (11th Cir. 1999).

In *United States v. DeVaron*, 175 F. 3d at 940, the Court laid out two principles that are used in determining the defendant's role: first, the court must evaluate the defendant's role in the relevant conduct for which he has been held accountable, and second, the court may compare his role to that of other identifiable or discernable participants in the relevant conduct. *Id.*

Regarding the first prong in the *De Varon* analysis, the Court must first measure the defendant's role against the relevant conduct for which he is being held accountable at sentencing. *Id*. at 940. "In other words, the district court must assess whether the defendant is a minor…participant in relation to the relevant conduct attributed to the defendant in calculating [his] base offense level." *Id*. at 941. "[W]here the relevant conduct attributed to a defendant is identical to [his] actual conduct, [he] cannot prove that [he] is entitled to a minor role adjustment simply by pointing to some broader criminal scheme in which [he] was a minor participant but for which [he] was not held accountable. *Id*. Consequently, the Court should grant a downward adjustment for "minor role" in the offense "[o]nly if the defendant can establish that [he] played a relatively minor role in the conduct for which [he] has already been held accountable-not a minor role in any larger criminal conspiracy." *Id*. at 944.

After conducting the above analysis, the Court may (but is not required to) also measure the defendant's culpability in comparison to that of other participants in the relevant conduct. *Id*. *See also*, *United States v. Nunez-Gonzales*, 223 F. App'x 924, 926 (11th Cir. 2007) ("Under the *De Varon* analysis, measuring [the defendant's] role against the conduct charged [is] the crucial step, the one that the court "must" take, not, as in the second prong, one that it "may" take). However, the Court should look to other participants "only to the extent that they are identifiable or discernable from the evidence." *Id*. Moreover, the Court may consider "only those participants who

were involved in the relevant conduct attributed to the defendant." *Id*. "The conduct of participants in any larger criminal conspiracy is irrelevant." *Id*.

Finally, a defendant is not entitled to a "minor role" adjustment unless and until the Court determines, based on the evidence presented, that "the defendant was less culpable than *most other participants* in [his] relevant conduct." *Id*. This means that a defendant is not entitled to a "minor role" adjustment merely because he is "somewhat less culpable than the other discernable participants." *Id*. Moreover, just because another identifiable participant may be subject to an aggravating role, that does not in itself entitle the defendant to a mitigating role adjustment. *Id*. at 944. ("The fact that a defendant's role may be less than that of other participants engaged in the relevant conduct may not be dispositive of role in the offense, since it is possible that none are minor or minimal participants."). Ultimately, the defendant bears the burden of demonstrating that he is <u>substantially</u> less culpable than the <u>average</u> participant (not the most or least culpable participant). U.S.S.G. § 3B1.2. cmt. n.3(A).

Determining whether a defendant merits a mitigating role reduction is a heavily fact-dependent, totality of the circumstances analysis that requires consideration of various factors, including:

    (i)    the degree to which the defendant understood the scope and structure of the criminal activity;
    (ii)    the degree to which the defendant participated in planning or organizing the criminal activity;
    (iii)    the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;
    (iv)    the nature and extent of the defendant's participation in the

> commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;
>
> (v) the degree to which the defendant stood to benefit from the criminal activity.

*Id.* § 3B1.2 cmt. n.3(C)

The Eleventh Circuit has applied the *De Varon* analysis to maritime interdiction conspiracy cases similar to the instant case and has upheld the district court's decision to deny a mitigating role reduction for a crewmember. For instance, in *United States v. Palma-Meza*, 685 F. App'x 806 (11th Cir. 2017), the defendant – like Mr. Orozco Perez – pleaded guilty to drug trafficking in international waters in violation of 46 U.S.C. § 70503(a). The *Palma-Meza* court sentenced that defendant based on the quantity of cocaine involved (480 kilograms), the vessel's small crew size, and the defendant's background and work experience, and noted that the quantity of drugs "was not insignificant" and that his role on the vessel "was not meaningfully distinct from the other two crewmembers." *Id.* at 807-08; 810. In *United States v. Herrera-Villarreal*, 665 F. Appx. 762, 763 (11th Cir. 2016), the defendant faced the same two charges on which the grand jury indicted Mr. Orozco Perez. The *Herrera-Villarreal* court sentenced that defendant "based on the offense conduct of transporting 1,227 kilograms of cocaine as a crewmember aboard a vessel." *Id.* at 764. The Eleventh Circuit explained that "[b]ecause [the defendant's] offense level was calculated using only the amount of drugs found on the boat on which he served, he did not have a minor role compared to his relevant conduct." *Id.* The Eleventh Circuit emphasized that the defendant's "actual conduct was identical to

the relevant conduct attributable to him." *Id.* The court also pointed out that the defendant presented no evidence demonstrating that he was less culpable than the other vessel's crewmembers. *Id.*

The Eleventh Circuit has continued to apply the approach outlined in *DeVaron* when considering minor role decisions. *United States v. Mero Munoz*, 805 F. App'x 797, 801 (11th Cir. 2020), *citing United States v. Cruickshank*, 837 F.3d 1182, 1195 (11th Cir. 2016) (despite the clarifying amendments to the sentencing guidelines commentary, the guidelines "continue to embrace the approach we took in *DeVaron*"); *United States v. Valois*, 915 F.3d 717, 732 (11th Cir. 2019) (upholding denial of minor role in maritime smuggling case where the Court correctly considered the totality of the circumstances, including *DeVaron* analysis and the fact that the defendants knowingly participated in the illegal transportation of a large quantity of cocaine, they were important to the scheme, and they were held responsible only for that conduct).

As correctly pointed out by Mr. Orozco in his sentencing memorandum, the Eleventh Circuit has remanded cases in which the district court relied *entirely* on a single factor to deny minor role rather than analyzing the totality of the circumstances as required by law. Dkt. 59 at p. 15. In *United States v. Valencia*, 822 F. App'x 942, 948 (11th Cir. 2020), the Eleventh Circuit remanded a case where the record showed the district court based its minor role decision *solely* on the mariner's title. In *United States v. Valdez*, 820 F. App'x 980, 981 (11th Cir. 2020), the Eleventh

Circuit similarly remanded a case when the district court based its minor role decision *solely* on the ground that no role reduction is available when a defendant is held accountable for only his own relevant conduct.

To be clear, the United States is not inviting the court to reject a totality of the circumstances analysis and rely on any single factor to deny minor role. Rather after considering all the relevant factors using the framework established in *DeVaron* and U.S.S.G. 3B1.2 cmt. N.3(C), this Court should find that Mr. Orozco Perez has failed to establish his entitlement to a minor role adjustment.

**B.     After considering all relevant factors this court should conclude that Mr. Orozco Perez is not entitled to a minor role adjustment**

That Mr. Orozco Perez's actual conduct was coextensive with his relevant conduct is an important consideration in analyzing whether he is entitled to minor role. Although Mr. Orozco Perez' conspiracy may be part of a larger criminal enterprise, he is not being held accountable for the actions of any larger enterprise. He is solely being held accountable for his actions on the GFV, where he was one of three men whose job it was to transport this cocaine across international waters aboard the GFV. *De Varon*, 175 F.3d at 941, 947 (court should evaluate defendant's role based on the conspiracy for which he is held accountable; rejecting notion that the defendant's role should be based on a "far-flung narcotics enterprise that may stretch from the grower, to the manufacturer in a foreign land, through the distribution mechanism, to the final street-level distributor"). Mr. Orozco Perez' offense level is calculated using only the amount of drugs on the vessel. Dkt. 56 at

¶¶20-21. Thus, his "actual conduct was identical to the relevant conduct attributable to him." *Herrera-Villarreal*, 665 F. App'x. At 764. Because Mr. Orozco Perez did not have a minor role compared to his relevant conduct, he cannot carry his burden on the first prong of the *De Varon* analysis. *See, e.g., Alvarado-Forbes*, 247 F. App'x at 205 (denying minimal participant or minor role where defendant claimed his sole purpose on a vessel with kilograms of cocaine was "to be a live body" and "make the vessel look like a fishing vessel"; defendant's stated purpose "would not make him a minor participant because concealing the illegal nature of the vessel's cargo would be vital to the success of the smuggling scheme").

Mr. Orozco Perez also does not satisfy *De Varon*'s second prong, which permits the Court to compare the defendant's role in the conspiracy to that of other participants in the criminal scheme attributable to him. *De Varon*, 175 F.3d at 934, 944. As previously noted, the conspiracy for which Mr. Orozco Perez is being held accountable is limited to three men on a boat transporting 83 kilograms of cocaine and 909 kilograms of marijuana through international waters. Just because Mr. Orozco Perez was not the person who identified himself as the master during right-of-visit questioning does not entitle him to a minor role reduction. He has failed to prove that he was less responsible than the other men on the boat. *See United States v. Pico-Mocera*, 740 F. App'x 969, 972-73 (11th Cir. 2018) (upholding denial of minor role where defendant failed to prove he had a lesser role than either of the other crewmembers); *United States v. Palma-Meza*, 685 F. App'x 806, 811 (11th Cir. 2017) (upholding denial of minor role even though defendant was a mariner with less

responsibility than captain and load guard); *United States v. Ramirez-Garcia*, 195 F. App'x 888, 890 (11th Cir. 2006) (rejecting mitigating role reduction where defendant was one of six mariners on a drug smuggling vessel that carried kilograms of cocaine).

The amount of drugs involved (over 900 kilograms of marijuana and 83 kilograms of cocaine) remains a material and important factor that strongly weighs against a minor role adjustment. *United States v. Palma-Meza*, 685 F. App'x 806, 809 (11th Cir. 2017) ("drug quantity remains a valid consideration when conducting the 'fact-intensive' inquiry into a defendant's role in the offense"). Furthermore, the fair market value of the drugs heavily weighs against a minor role adjustment. According to the 2019 National Drug Theat Assessment[2], the national average retail price of cocaine was last recorded at approximately $153 per gram[3], or $153,000 per kilogram, while the average black market price for high quality marijuana was $800-1000 per pound[4]. Conservatively, the wholesale value of that amount of cocaine would be over $12 million, and the wholesale value of the marijuana is nearly $1.6 million, despite the likely lower quality of the marijuana.[5]

Mr. Orozco Perez understood the scope or structure of the criminal activity. He decided to board a go-fast vessel loaded with packages of drugs that were openly

---

[2] 2019 National Drug Threat Assessment, DEA-DCT-DIR-007-20, December 2019, available at https://www.dea.gov/sites/default/files/2020-02/DIR-007-20%202019%20National%20Drug%20Threat%20Assessment%20-%20low%20res210.pdf
[3] *Id.* at p. 61
[4] *Id.* at p. 82 (listing price of $800-1000 per pound of high-quality marijuana), 88 (marijuana from the Carribean is typically lesser in quality than that produced in North America).

visible on the deck, and he has admitted he knew that the purpose of the voyage was to smuggle these drugs across international waters for distribution to other persons. Dkt. 30 p. 21. Mr. Orozco may not have planned the entire venture by himself, but once the GFV left shore, he and his co-conspirators were in charge of executing and completing the drug-smuggling venture through delivery of the drugs in exchange for payment.

Although mariners in maritime drug smuggling operations transport drugs, they are not analogous to couriers that transport a few kilograms of drugs across the border in the trunk of a car.[6] Instead, these men often perform a multi-day function that requires specialized maritime and navigational knowledge, complex logistics and communications, and the risk not only of detection, but also of death due to the perilous conditions of the sea. Once the loaded go-fast vessel leaves the shore, the mariners sailing it are entrusted by the cartels to transport millions of dollars worth of drugs across international waters to reach their ultimate destination—and they are often paid commensurate with the skill, trust and risk involved.

After consideration of all the relevant factors including those listed in the U.S.S.G. §3B1.1 commentary note, and *DeVaron,* using the approach outlined by the 11th Circuit in *DeVaron,* this Court should deny Mr. Orozco Perez's request for a

---

[6] The mean compensation for cross-border couriers transporting drugs by driving or walking through the U.S-Mexico border checkpoint, according to this 2011 study was $1,601. Mason, Caleb E. and Bjerk, David, The Market for Mules: Risk and Compensation of Cross-Border Drug Couriers (July 7, 2011). Available at SSRN: https://ssrn.com/abstract=1881212 or http://dx.doi.org/10.2139/ssrn.1881212

minor role reduction because he has failed to demonstrate that he is substantially less culpable than the average participant in the criminal activity.

## Sentencing Factors

In *United States v. Booker*, 543 U.S. 220 (2005), and its progeny, sentencing judges should apply the United States Sentencing Guidelines in arriving at an appropriate sentence, but application of the U.S.S.G. is not mandatory. *Booker*, 543 U.S. at 264 ("The district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing."). Accordingly, sentencing judges should apply the U.S.S.G. in determining a reasonable sentence, but can also exercise discretion in deviating from the U.S.S.G., if doing so would result in a reasonable sentence, taking into consideration other factors that Congress has enumerated in 18 U.S.C. § 3553(a).

Section 3553(a) requires that the sentence reflect:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant;

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional

      treatment in the most effective manner;

(3)  the kinds of sentences available;

(4)  the kinds of sentence and the sentencing range established for the offense category in the guidelines;

(5)  any pertinent policy statement issued by the Sentencing Commission;

(6)  the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and

(7)  the need to provide restitution to any victims of the offense.

Regarding the reasonableness of a U.S.S.G. sentence, "'when the district court imposes a sentence within the advisory Guidelines range,'" the Eleventh Circuit "'ordinarily will expect that choice to be a reasonable one.'" *United States v. Docampo*, 573 F.3d 1091, 1101 (11th Cir. 2009) (quoting *United States v. Talley*, 431 F.3d 784, 788 (11th Cir. 2005)).

  To arrive at an appropriate sentence, the district court must consider all of the applicable Section 3553(a) factors. *United States v. Shaw*, 560 F.3d 1230, 1237 (11th Cir. 2009). That does not mean, however, that it must give all of the Section 3553(a) factors equal weight. Instead, the sentencing court "is permitted to attach 'great weight' to one factor over others." *Id.* (quoting *Gall v. United States*, 552 U.S. 38, 57 (2007)). The decision about how much weight to assign a particular sentencing factor is "committed to the sound discretion of the district court." *United States v. Williams*, 526 F.3d 1312, 1322 (11th Cir. 2008) (internal citation omitted).

In this case, the § 3553(a) factors call for a sentence of 70 months. The undisputed facts demonstrate that Mr. Orozco Perez knowingly and intentionally conspired to possess with intent to distribute 83 kilograms of cocaine and 909 kilograms of a marijuana while on a vessel subject to the jurisdiction of the United States. This conduct, standing alone, merits a sentence commensurate with the United States' recommendation.

It is not disputed that the defendant committed this crime out of a financial necessity. Indeed, it is not in dispute that the allure of drug trafficking is in the money that can be made from it. Though economic hardships in South and Central America are beyond comprehension, that financial need does not condone facilitating a pattern of international trafficking.

Countless people throughout the world have been unfortunately impacted by the Coronavirus global pandemic, like Mr. Orozco Perez, but unlike him, most have not turned to international drug smuggling or other crimes in order to solve their economic problems. Despite his stated noble motives for undertaking this criminal activity, Mr. Orozco must be held accountable for his decision to participate in this

serious offense. In light of the above, and taking into account all of the Section 3553(a) factors, a sentence of 70 months is sufficient but not greater than necessary to comply with the statutory purposes of sentencing.

Respectfully submitted,

MARIA CHAPA LOPEZ
United States Attorney

By: /s/ *Tereza Zambrano Ohley*
Tereza Zambrano Ohley
Special Assistant United States Attorney
Florida Bar No. 0060407
400 N. Tampa Street, Suite 3200
Tampa, Florida 33602-4798
Telephone: (813) 274-6000
Facsimile: (813) 274-6358
E-mail: Tereza.Ohley@usdoj.gov

U.S. v. Orozco Perez                    Case No. 8:20-cr-198-T-35AAS

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 14, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

    Counsel of Record

                                      /s/ *Tereza Zambrano Ohley*
                                      Tereza Zambrano Ohley
                                      Special Assistant United States Attorney
                                      Florida Bar No. 0060407
                                      400 N. Tampa Street, Suite 3200
                                      Tampa, Florida 33602-4798
                                      Telephone:  (813) 274-6000
                                      Facsimile:   (813) 274-6358
                                      E-mail: Tereza.Ohley@usdoj.gov